# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* WILFRED JOSEPH BENEDETTI ESTATE
AND TRUST.

---

DENISE M. VIOLA,

        Petitioner-Appellant,

v

JOSEPH W. BENEDETTI,

        Respondent-Appellee.

UNPUBLISHED
November 19, 2015

No. 323573
Wayne Probate Court
LC No. 2012-775541-DA

---

Before: JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

Petitioner, Denise M. Viola, appeals as of right a probate court order granting respondent Joseph W. Benedetti's motion for summary disposition. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of the changes that decedent Wilfred J. Benedetti ("decedent") made to his estate plan in 2011. Decedent was the father of petitioner, respondent, and Debra Lawrence, an incapacitated individual.[1] Respondent was born during decedent's marriage with Sandra Benedetti ("Sandy"), while petitioner and Debra were born during a previous marriage.

In August 2007, decedent executed a will and trust agreement, under which respondent received a specific bequest of real property, the remaining trust property was divided equally between each of decedent's children, and respondent, petitioner, and Debra were to serve as co-trustees upon decedent's death.

In June 2011, decedent was hospitalized for a brain hemorrhage. Although he exhibited some issues with writing and articulating his words after the stroke, he had a strong recovery and

---

[1] Decedent served as Lawrence's guardian until he died.

resumed driving and managing his own business and financial matters within a few weeks. He also continued to receive treatment for his previously diagnosed diabetes. Following his stroke, Eva Benedetti ("Eva"), who is respondent's wife and a nurse, provided assistance to decedent in the management of his personal and business affairs and medical care, which included attending doctor appointments with decedent and communicating with medical professionals.

After the stroke, decedent added respondent to his bank account. Additionally, beginning in July 2011, he met with attorney David A. Sims in order to amend his trust and execute other documents. Decedent met with Sims several times before executing the documents in November 2011. Under the amended trust agreement, all of decedent's property was distributed to respondent (or respondent's daughter, if respondent predeceased decedent), and nothing was left to Debra and petitioner. Respondent also was appointed as successor trustee.

Petitioner subsequently filed two petitions to admit the 2007 will and trust agreement and to set aside the 2011 trust amendment, will, and *inter vivos* conveyances of property also executed by decedent in 2011. Petitioner alleged that respondent and Eva unduly influenced decedent's amendments to his estate plan.[2]

Respondent filed a motion for summary disposition under MCR 2.116(C)(10), asserting that there is no genuine issue of material fact regarding whether a presumption of undue influence applies in this case and whether decedent was unduly influenced by respondent or Eva to amend his estate plan. The trial court granted respondent's motion for summary disposition and denied petitioner's motion for reconsideration, concluding that a presumption of undue influence did not arise in this case because neither respondent nor Eva had a confidential or fiduciary relationship with decedent, and petitioner proffered no evidence the decedent was subjected to undue influence.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's grant or denial of summary disposition. *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). When reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), this Court may only consider, in the light most favorable to the party opposing the motion, the evidence that was before the trial court, which consists of "the 'affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties.' " *Calhoun Co v Blue Cross Blue Shield Michigan*, 297 Mich App 1, 11-12; 824 NW2d 202 (2012), quoting MCR 2.116(G)(5). Under MCR 2.116(C)(10), "[s]ummary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing

---

[2] The guardian ad litem appointed in the case also filed a petition to strike decedent's last will and trust, but this petition was consolidated with the instant petitions.

the record in the light most favorable to the nonmoving party," *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008), or if "the evidence submitted might permit inferences contrary to the facts as asserted by the movant," *Dillard v Schlussel*, 308 Mich App 429, 445; 865 NW2d 648 (2014), quoting *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 360, 320 NW2d 836 (1982) (quotation marks omitted). "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).

III. ANALYSIS

A. PRESUMPTION OF UNDUE INFLUENCE:
FIDUCIARY RELATIONSHIP

Petitioner first asserts that the trial court erred in finding that there was no genuine issue of material fact regarding whether a presumption of undue influence is applicable in this case because it failed to view the evidence in the light most favorable to petitioner. We disagree.

Viewing the evidence in a light most favorable to the petitioner, the lower court record confirms that the probate court properly found that petitioner failed to establish the existence of a fiduciary or confidential relationship with decedent. *Calhoun Co*, 297 Mich App at 11-12. Contrary to petitioner's position on appeal, viewing the evidence in the light most favorable to the nonmoving party does not mean that a court must blindly follow or adopt the nonmoving party's inferences or theory of the case and ignore evidence that undermines the nonmoving party's interpretation of the record evidence. See *Allison*, 481 Mich at 425; *Dillard*, 308 Mich App at 445.

A presumption that an individual was unduly influenced may apply under the following circumstances:

> A presumption of undue influence arises upon the introduction of evidence that would establish (1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary, or an interest represented by the fiduciary, benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction. [*In re Estate of Erickson*, 202 Mich App 329, 331; 508 NW2d 181 (1993) (citation omitted); see also *In re Estate of Karmey*, 468 Mich 68, 75; 658 NW2d 796 (2003).]

In *In re Karmey Estate*, the Michigan Supreme Court provided the following definition of "fiduciary relationship":

> [a] relationship in which one person is under a duty to act for the benefit of the other on matters within the scope of the relationship. Fiduciary relationships-such as trustee-beneficiary, guardian-ward, agent-principal, and attorney-client-require the highest duty of care. Fiduciary relationships [usually] arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been

recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer. [*In re Estate of Karmey*, 468 Mich at 74 n 2, quoting *Black's Law Dictionary* (7th ed) (quotation marks omitted).]

Additionally, the Court stated the following with regard to the phrase "confidential or fiduciary relationship" in the context of a claim of undue influence:

> Although a broad term, "confidential or fiduciary relationship" has a focused view toward relationships of inequality. This Court recognized in *In re Wood's Estate*, 374 Mich 278, 287; 132 NW2d 35 (1965), that the concept had its English origins in situations in which dominion may be exercised by one person over another. Quoting 3 Pomeroy, *Equity Jurisprudence* (5th ed, 1941), § 956a, this Court said a fiduciary relationship exists as fact when " 'there is confidence reposed on one side, and the resulting superiority and influence on the other.' " 374 Mich 283.

> Common examples this Court has recognized include where a patient makes a will in favor of his physician, a client in favor of his lawyer, or a sick person in favor of a priest or spiritual adviser. 374 Mich 285-286. In these situations, complete trust has been placed by one party in the hands of another who has the relevant knowledge, resources, power, or moral authority to control the subject matter at issue. [*In re Estate of Karmey*, 468 Mich at 74 n 3.]

A fiduciary relationship is not necessarily established when an inexperienced party relies on another party. *Ulrich v Fed Land Bank of St Paul*, 192 Mich App 194, 196; 480 NW2d 910 (1991). Instead, "[a] fiduciary relationship arises from the reposing of faith, confidence, and trust, and the reliance of one upon the judgment and advice of another." *Id*.

Based on the foregoing principles, the evidence, even when viewed in the light most favorable to petitioner, does not establish that respondent or Eva had a fiduciary relationship with decedent.[3]

First, with regard to respondent, petitioner failed to proffer evidence establishing that respondent had a fiduciary relationship with decedent before or at the time that he amended his estate plan in November 2011. In the probate court, petitioner argued that respondent shared a fiduciary relationship with decedent based on two powers of attorney, which decedent allegedly executed in 2007. This Court has recognized that a fiduciary relationship arises as a matter of

---

[3] Petitioner also appears to suggest in passing that Sandy had a fiduciary relationship with decedent based on the fact that she stayed with decedent following his stroke and attended some of decedent's doctor appointments. However, there is no evidence that Sandy was responsible for decedent's care or had a fiduciary or confidential relationship with decedent when he amended his estate plan. As such, there is no genuine issue of material fact as to whether a presumption of undue influence could arise based on Sandy's relationship with decedent. See *In re Estate of Karmey*, 468 Mich at 74 n 2, 74 n 3.

law from the execution of a power of attorney. *In re Susser Estate*, 254 Mich App 232, 236; 657 NW2d 147 (2002). However, petitioner only proffered unsigned documents in support of this claim and provided no evidence that decedent actually executed the powers of attorney, or that respondent utilized the powers of attorney, only contending "[u]pon information and belief" that decedent signed the documents.[4] See *Quinto v Cross & Peters Co*, 451 Mich 358, 363; 547 NW2d 314 (1996) ("If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted.").

Further, petitioner notes that respondent was initially a co-owner and later a beneficiary on decedent's bank account. However, this fails to show that respondent had a fiduciary relationship with decedent, especially given that there is no evidence that decedent trusted respondent to manage or utilize the funds on decedent's behalf. See *In re Estate of Swantek*, 172 Mich App 509, 514; 432 NW2d 307 (1988), citing *Van't Hof v Jemison*, 291 Mich 385, 393-394, 289 NW 186 (1939); *First National Bank & Trust Co of Marquette v Albert*, 66 Mich App 252, 261; 238 NW2d 827 (1975). Accordingly, this does not support petitioner's claim that respondent and decedent shared a confidential or fiduciary relationship that triggered a presumption of undue influence. See *In re Estate of Erickson*, 202 Mich App at 331. Furthermore, decedent removed respondent as a co-owner when funds for respondent's child support arrears were removed from the account, but, nonetheless, named respondent as the sole beneficiary of his trust in the subsequent amendments to his estate plan.

Petitioner also points to Eva's assistance with decedent's affairs as evidence that Eva had a fiduciary or confidential relationship with decedent. At most, the lower court record indicates that Eva provided assistance in the execution of decedent's business affairs, which included overseeing one of his rental properties, and provided administrative assistance with regard to his personal and financial affairs. However, this assistance is not sufficient on its own to give rise to presumption of undue influence on the basis of a confidential or fiduciary relationship, especially in light of the documentary evidence submitted by respondent showing that decedent continued to oversee his own business and financial affairs following the stroke. Instead, it is apparent from the record that decedent did not rely on Eva's judgment or otherwise depend on Eva to conduct his affairs. See *In re Estate of Karmey*, 468 Mich at 74 n 2; *Ulrich*, 192 Mich App at 196. See also *Salvner v Salvner*, 349 Mich 375, 383-385; 84 NW2d 871 (1957) (concluding that a parent-child relationship analogous to the facts of the instant case did not constitute a fiduciary relationship that gave rise to a presumption of undue influence); *In re Evans' Estate*, 283 Mich 275, 282; 277 NW 893 (1938) ("We have repeatedly held that the fact that a beneficiary under a will has for a considerable time been intimate with and attended to business transactions for a testator, notwithstanding the latter was mentally afflicted to the extent of being intermittently insane, does not raise a presumption of undue influence.").

In the lower court and on appeal, petitioner emphasizes the role that Eva played in decedent's medical care after his stroke as evidence of a fiduciary or confidential relationship

---

[4] We recognize that petitioner filed a petition for spoliation of evidence and sanctions against respondent related to these documents, which the trial court denied.

sufficient to trigger a presumption of undue influence. Evidence of a caregiver relationship is relevant to determining whether a fiduciary or confidential relationship exists for purposes of a presumption of undue influence. See, e.g., *Matter of Estate of Leone*, 168 Mich App 321, 325; 423 NW2d 652 (1988). However, contrary to petitioner's portrayal of the lower court record, the evidence presented to the probate court, even when viewed in the light most favorable to petitioner, does not demonstrate that decedent depended on Eva to make medical decisions on his behalf, that decedent placed complete trust in Eva regarding his medical care, or that there was inequality in their relationship. See *In re Estate of Karmey*, 468 Mich at 74, n 2, 74 n 3; *Ulrich*, 192 Mich App at 196. Likewise, even though the evidence indicates that Eva suggested that decedent receive care at the hospital where she works following his stroke and that Eva assisted in subsequent care, the record as a whole does not indicate that decedent "place[d] trust in the faithful integrity of [Eva]," that Eva actually assumed full control and responsibility over decedent's health, or that Eva had a duty to act for or give advice on medically related matters. See *In re Estate of Karmey*, 468 Mich at 74 n 2.

Rather, the evidence shows that decedent did not place his full trust in Eva's medical advice and that Eva did not, in fact, control decedent's medical care. For example, decedent refused to attend a follow up appointment with his endocrinologist despite Eva's recommendation, claiming that he felt fine, and Eva expressly admitted that she did not "make [decedent] go back" to the endocrinologist. In sum, there is no indication that Eva's relationship with decedent was characterized by inequality with regard to his medical care.[5] *In re Estate of Karmey*, 468 Mich at 74 n 3.

Even if we assume that a fiduciary or confidential relationship existed between Eva and decedent, the record does not demonstrate that Eva necessarily benefitted from the transaction herself or represented respondent's interest. *In re Estate of Erickson*, 202 Mich App at 331. Eva was not a beneficiary under decedent's trust; respondent was the only beneficiary, and in the event that respondent predeceased decedent, respondent's daughter was the beneficiary. Therefore, even if we assume that Eva qualified as a fiduciary, a presumption of undue influence does not apply in this case because the respondent's status as the sole beneficiary under decedent's trust does not establish that Eva represented respondent's interest or received a benefit from the transaction.

---

[5] Petitioner asserts that it was her "contention that Eva purposely failed to bring [decedent] back to [the endocrinologist] to further allow her to control him in regards to his Estate Plan." However, the record includes no evidence that would support such an inference or conclusion, and speculation does not establish a genuine issue of material fact sufficient to preclude summary disposition. See *Libralter Plastics, Inc v Chubb Group of Ins Companies*, 199 Mich App 482, 486; 502 NW2d 742 (1993) ("[P]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact. A conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference." [Citations omitted.]).

B.  EXISTENCE OF UNDUE INFLUENCE

Petitioner next argues that, even if Eva is not considered a fiduciary, the trial court erred in concluding that there was no genuine issue of material fact regarding the existence of undue influence in this case.  We disagree.

"To establish undue influence it must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will." *In re Estate of Karmey*, 468 Mich at 75 (quotation marks and citation omitted).  Notably, "[m]otive, opportunity, or even ability to control, in the absence of affirmative evidence that it was exercised, are not sufficient." *Id*. (quotation marks and citation omitted).  Likewise, the Michigan Supreme Court previously stated, "This Court has definitely established that undue influence may not be inferred from acts of kindness—it must be proved." *In re Langlois' Estate*, 361 Mich 646, 650; 106 NW2d 132 (1960).  Undue influence may be established through circumstantial evidence, but such "evidence must be of considerable probative force and, quite clearly, must do more than raise a mere suspicion." *In re Willey's Estate*, 9 Mich App 245, 257; 156 NW2d 631 (1967).

First, petitioner briefly asserts that decedent's act of adding respondent as a joint owner on his bank accounts demonstrates that respondent unduly influenced defendant.  This claim is meritless, as petitioner has failed to provide any explanation regarding how this act indicates that respondent subjected decedent "to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion." *In re Estate of Karmey*, 468 Mich at 75 (quotation marks and citation omitted).

Next, petitioner contests the probate court's conclusion that Sims' statement in his affidavit was consistent with his statement during his deposition testimony regarding whether respondent and Eva were present during any discussions about respondent's estate plan. Contrary to petitioner's claims, Sims' statements do not appear to be inconsistent.  Nevertheless, a genuine issue of material fact is not created by the purported discrepancy between the affidavit and the deposition testimony.  Even if respondent and Eva were present during a meeting with Sims, this shows, at the most, that Eva and a respondent may have had the opportunity to influence decedent's decisions regarding his estate plan, but it does not constitute affirmative evidence of undue influence sufficient to preclude summary disposition.  See *id*.[6]

Third, petitioner argues that undue influence is demonstrated by Eva's control of decedent's medical care in conjunction with decedent's "uncontrolled diabetes and kidney

---

[6] Petitioner also discusses the content of decedent's handwritten notes regarding his estate plan, which Eva typed, Sims' testimony regarding the alternatives that he discussed with decedent regarding financial support of Debra, and whether respondent has a legal obligation to provide for Debra.  Petitioner provides no explanation for how these facts establish undue influence, and none of these facts provide affirmative evidence that respondent or Eva utilized threats, misrepresentation, flattery, fraud, or coercion to impel decedent to amend his estate plan. *In re Estate of Karmey*, 468 Mich at 75.

issues." This, petitioner claims, allowed respondent and Eva "to weaken [decedent's] will and influence his decision to disinherit [petitioner] and Debra." However, there is nothing in the record that supports a reasonable inference that Eva or respondent manipulated decedent's medical care or otherwise prevented decedent from receiving medical attention in an attempt to control decedent. See *Libralter Plastics, Inc v Chubb Group of Ins Companies*, 199 Mich App 482, 486; 502 NW2d 742, 744 (1993) ("[P]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." [Citations omitted.]).

Finally, petitioner asserts that the probate court erred in failing to reference in its decision evidence regarding Eva's previous involvement in criminal and civil proceedings, Eva's attempts to transact business at a bank on behalf of respondent without respondent's authorization, and Eva's and respondent's "use[] of strong arm tactics to try and influence" individuals other than decedent in the past. Even if we assume, arguendo, that petitioner supported all of these claims with admissible documentary evidence, see *Taylor v Modern Engg, Inc*, 252 Mich App 655, 658; 653 NW2d 625 (2002), these facts do not establish a genuine issue of material fact. All of the instances identified by petitioner are irrelevant to the transactions at issue and fail to provide any affirmative evidence that undue influence was exercised in this case. Again, "[m]otive, opportunity, or even ability to control, in the absence of affirmative evidence that it was exercised, are not sufficient" to demonstrate undue influence. *In re Estate of Karmey*, 468 Mich at 75 (quotation marks and citation omitted).[7]

## IV. CONCLUSION

Petitioner failed to proffer evidence establishing a genuine issue of material fact regarding whether a presumption of undue influence was triggered in this case. Likewise, she only provided evidence demonstrating that Eva and respondent may have had a motive, opportunity, or ability to control decedent; such evidence is not sufficient to establish a genuine issue of material fact regarding the existence of undue influence. *Id*.; see also *In re Kenney's Estate*, 250 Mich 289, 294; 230 NW 161 (1930) ("But there must be more than mere opportunity, unequal distribution of property, or previous statement by the testator as to intended disposition of his estate from which the will departs, to constitute undue influence." [Quotation marks and citation omitted.]). Respondent, however, presents significant evidence, especially

---

[7] Petitioner also asserts that the probate "court was generally prejudicial to the petitioner and hypercritical of petitioner's argument even concerning peripheral facts," noting a series of instances when the trial court commented on or criticized petitioner's claims during the hearing on respondent's motion for summary disposition. This argument appears to be in support of petitioner's request for relief that this matter be remanded to a different judge. However, we deem this issue abandoned because petitioner failed to include this issue in her statement of the questions presented, MCR 7.212(C)(5), and she failed to state the applicable standard of review or cite any authority in support of her claims and request for relief, *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2000); *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

through Sims' deposition testimony and affidavit, that decedent was not unduly influenced in amending his estate plan and that decedent had specific reasons for disinheriting petitioner and Debra.

Accordingly, the probate court properly granted summary disposition in favor of respondent, as there is no genuine issue of material fact regarding whether decedent was unduly influenced by respondent and Eva. See *Latham*, 480 Mich at 111.

Affirmed.


/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Michael J. Riordan