**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED APRIL 8, 2003**

*In re* ESTATE OF
ABRAHAM KARMEY, Deceased

_____

MARIANNE KARMEY-KUPKA, GEORGE
KARMEY, and IRENE KARMEY,

    Petitioners-Appellees,

v                              No. 121082

MARGARET KARMEY,

    Respondent-Appellant.

_____

PER CURIAM

In their petition to set aside a will, the children of the decedent claimed that the beneficiary of the will, decedent's second wife, had exercised undue influence over the decedent when he made her the sole beneficiary of his estate. The probate judge ruled that petitioners had failed to present sufficient evidence for a jury to find that decedent's wife unduly influenced her husband, and the judge therefore granted respondent's motion for a directed verdict. The Court of Appeals reversed and remanded the case for trial, holding that

there was a question for the jury whether decedent and his wife had a confidential or fiduciary relationship, which would create a rebuttable presumption of undue influence.

The Court of Appeals reluctantly based its holding on this Court's decision in *Kar v Hogan,* 399 Mich 529; 251 NW2d 77 (1976), which the Court viewed as encompassing most marriages within the test for applying the presumption. We conclude that marriage does not give rise to a presumption of undue influence. We reverse that portion of the Court of Appeals decision necessitating a remand and reinstate the probate court's grant of a directed verdict.

I

Abraham Karmey died in 1997, leaving his entire estate to his wife of twenty years, Margaret Karmey. Margaret was Abraham's second wife. The three children of his first marriage, petitioners in this case, sought to have their father's will set aside, alleging that Margaret had exerted undue influence over their father when he drafted the will. They based their contention in large measure on statements he had allegedly made a year before drafting the will in which he expressed his intent to give each of them $25,000, as well as a business to operate. The inventory prepared by Margaret Karmey as the personal representative of her husband's estate showed a worth of only $57,000 at the time of his death.

The case proceeded to a jury trial in 1999, with the petitioners presenting testimony that Abraham feared Margaret

2

and that she had control of the family finances, especially after he became ill in his last years. Margaret's position was that she had a typical marriage in which she shared confidences with her husband. At the close of petitioners' proofs, Margaret moved for a directed verdict. The probate judge granted the motion, noting that for influence to be undue, it must have overpowered the decedent's own free will. The judge said, "[T]he decedent may be influenced in the disposition of his property by specific or direct influences without such influences being undue." It is not improper, said the judge, for a spouse to use her powers of persuasion to shape the crafting of a will.

The judge rejected petitioners' argument that Abraham and Margaret were in a fiduciary relationship, so as to give rise to a presumption of undue influence:

> The Contestant——that's you——has the burden of proving that there was undue influence exerted on the decedent in making the Will.
>
> And part of your argument is the spousal relationship becomes that of a fiduciary relationship. I'm going to say that that is not the law and that's not the way I'm going to rule. She admitted that there was a confidential relationship but there should be a confidential relationship between all spouses.
>
> She also indicated that she didn't handle his finances and he paid the bills. So other than that one statement the court does not believe that there's sufficient factual basis that I can find a confidential relationship, therefore, the presumption doesn't come into play.

Petitioners appealed to the Court of Appeals, arguing

that the judge's conduct in admonishing witnesses denied them a fair trial and that the proofs of a trusting marital relationship between Abraham and Margaret Karmey established a mandatory presumption of undue influence that had not been rebutted, making the directed verdict inappropriate. The Court rejected the first argument, but on a two-to-one vote agreed with the latter. Unpublished opinion per curiam, issued February 8, 2002 (Docket No. 223270).

The Court majority noted that Margaret Karmey's own trial testimony had indicated that a trusting relationship existed with her husband. Her relationship with Abraham, she agreed, was a "typical marriage" in which they were "very close" and he was her "closest friend," sharing things with her that he would not share with other people. *Id*. at 8. The Court determined that Abraham, at least on occasion, relied upon Margaret, and that she had an opportunity to influence him "because they were married and because he was allegedly afraid of her." *Id*. Because there was evidence that Abraham and Margaret had a "loving and trusting relationship," it was appropriate, said the Court, for a jury to resolve the undue influence issue, including the question whether a fiduciary relationship existed. *Id*.

The Court of Appeals majority recognized that under its holding, a presumption of undue influence could attach to all wills where one spouse leaves property exclusively to the remaining spouse, especially when to the exclusion of other

4

family members.  The majority admitted that it was "not particularly enamored of the possibility of such a result."[1] *Id*. at 9.  However, it felt compelled to reach its conclusion on the basis of this Court's decision in *Kar.*

                                    II

*Kar* concerned an action to set aside a property deed between a wife and husband on the ground that it was procured through undue influence.  The action was brought by the stepchildren of the deceased, Julia Merkiel, who had married their father in 1914.  The father died in 1951, and Julia married Edward Merkiel in 1953.  In 1969, property owned by Julia was deeded to her and Edward as tenants by "their entireties," thereby precluding the children from gaining an interest in the property upon her death.

After completion of the proofs, the trial judge found that Julia and Edward met the test for a confidential or

---

[1] This concern was echoed by the dissent, which warned:

> Were we to apply the three-part test to a will contest where a spouse leaves everything to a surviving spouse, then a factual finding of a good marriage would automatically mean that a rebuttable presumption of undue influence would arise.  This surely cannot nor should it be the law.  More should be shown to raise a presumption of undue influence between spouses than a good confidential relationship where each understandably looked to the other for advice and took the advice of the other.  To hold as the majority does and as the majority interprets *Kar* to have ruled, simply serves to penalize a good marriage by requiring a will contest trial if a third party objects to one spouse leaving virtually the entire estate to the surviving spouse.

fiduciary relationship and, as a result, applied a presumption of undue influence to the case. He further found that defendant had rebutted the presumption, and he therefore ruled in defendant's favor.

The judge's utilization of the presumption of undue influence was based on a widely applied three-factor test, which this Court detailed in *Kar* as follows:

> The presumption of undue influence is brought to life upon the introduction of evidence which would establish (1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary or an interest which he represents benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction. [399 Mich 537.]

Although *Kar* accepted the trial judge's utilization of the presumption of undue influence, that was not the focus of *Kar.* Instead, the critical issue for discussion concerned the burden of proof and the shifting evidentiary obligations of the parties when the presumption of undue influence has been found. *Kar* did not discuss what type of proofs were necessary to meet the three-part test. It simply operated on the premise that the marriage at issue was subject to the presumption.

The Court of Appeals majority in this case, recognizing that the Court in *Kar* had accepted the trial judge's finding that the three-part test was met, concluded that *Kar* had established a rule that all spousal relationships of trust and confidence meet the three-part test, thereby bringing forth

6

the presumption of undue influence.  We reject this implication in *Kar*.

III

"Fiduciary relationship" is a legal term of art,[2] as is the phrase "confidential or fiduciary relationship."[3]

---

[2] Black's Law Dictionary (7th ed) defines the term as

> [a] relationship in which one person is under a duty to act for the benefit of the other on matters within the scope of the relationship.  Fiduciary relationships—such as trustee-beneficiary, guardian-ward, agent-principal, and attorney-client—require the highest duty of care. Fiduciary relationships [usually] arise in one of four situations:  (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer.

[3] Although a broad term, "confidential or fiduciary relationship" has a focused view toward relationships of inequality.  This Court recognized in *In re Wood Estate,* 374 Mich 278, 287; 132 NW2d 35 (1965), that the concept had its English origins in situations in which dominion may be exercised by one person over another.  Quoting 3 Pomeroy, *Equity Jurisprudence* (5th ed, 1941), § 956a, this Court said a fiduciary relationship exists as fact when "'there is confidence reposed on one side, and the resulting superiority and influence on the other.'"  374 Mich 283.

Common examples this Court has recognized include where a patient makes a will in favor of his physician, a client in favor of his lawyer, or a sick person in favor of a priest or spiritual adviser.  374 Mich 285-286.  In these situations, complete trust has been placed by one party in the hands of another who has the relevant knowledge, resources, power, or moral authority to control the subject matter at issue.

7

Marriage, however, is a unique relationship, treated in law differently from other relationships, for a host of obvious reasons.

In the context of this case and the analysis provided in *Kar*, it can be said that marriage is not a relationship that has traditionally been recognized as involving fiduciary duties. It is a unique relationship based on mutual trust and commitment. We do not believe the presumption of undue influence is applicable to such a relationship.

One should not lose sight of the basic principles underlying the concept of *undue* influence. As this Court said in *Kar*:

> To establish undue influence it must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will. Motive, opportunity, or even ability to control, in the absence of affirmative evidence that it was exercised, are not sufficient. [399 Mich 537.]

The influence of a husband or a wife over that person's spouse could be great—at times almost overwhelming—without being "undue." Although we agree with the standard for application of the presumption of undue influence established in *Kar*, we hold that this presumption is not applicable to marriage.[4]

---

[4] To be clear, we hold that no *presumption* of undue influence arises by the fact of marriage. We do not exclude the possibility that, under facts other than those presented in this particular case, a person might exercise undue

In this case, the probate judge found that the proofs presented by the petitioners did not raise a question of fact about whether the relationship between Abraham and Margaret Karmey was a confidential or fiduciary relationship. The record supports this finding. Further, the marriage relationship between Abraham and Margaret Karmey was not shown by any factual allegations to be a relationship of undue influence.

Because the presumption of undue influence is not applicable to marriage, that portion of the Court of Appeals decision remanding this case for trial is reversed, and the probate court's grant of a directed verdict is affirmed. MCR 7.302(F)(1).

> Maura D. Corrigan
> Michael F. Cavanagh
> Elizabeth A. Weaver
> Marilyn Kelly
> Clifford W. Taylor
> Robert P. Young, Jr.
> Stephen J. Markman

---

influence over a weakened or vulnerable spouse.