# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* WILLIAMS Estate.

---

JOSEPH F. WILLIAMS,

        Appellant,

v

BRADLEY J. SELVIG, Personal Representative,

        Appellee.

UNPUBLISHED
July 20, 2017

No. 332993
Kent Probate Court
LC No. 11-191297-DE

---

Before: GADOLA, P.J., TALBOT, C.J., and GLEICHER, J.

PER CURIAM.

This case involves the validity of a will dated October 4, 2011, which was executed by the decedent, Joseph S. Williams, before he died of cancer on November 7, 2011, at 31 years of age. Appellant, Joseph F. Williams, the father of the decedent, appeals as of right the probate court's order granting the motion for summary disposition filed by appellee, Bradley J. Selvig, brother of the decedent and personal representative of the estate. Appellee filed the motion for summary disposition in response to a petition filed by appellant, which alleged that the October 4, 2011 will was invalid because the decedent lacked testamentary capacity and executed the document as the result of undue influence. We affirm the order of the probate court.

## I. BACKGROUND

The decedent was diagnosed with cancer in May 2011. On September 23, 2011, while the decedent was living with appellant in Ohio, the decedent executed a will that contained a residuary clause naming appellant as the residuary beneficiary. Later that month, the decedent was airlifted to a hospital in Grand Rapids, Michigan, near his mother, Katherine Grunwell, and her family, and was subsequently transferred to hospice care at Faith Hospice in a suburb of Grand Rapids. On October 4, 2011, the decedent, with the assistance of his attorney, James J. Rosloniec, executed a durable power of attorney and a new will that named Ashley and Victoria Selvig, daughters of appellee, as residuary beneficiaries instead of appellant.

Before his death, the decedent worked in Australia and obtained through his employer an Intrust Superannuation Fund, which paid a benefit upon his death and was governed by

Australian law. The decedent was permitted to nominate preferred beneficiaries for the payment of the death benefit, and in fact nominated his aunt, Marie Reichert, and appellant to receive the death benefit in equal shares. However, the nomination form made clear that any nomination "will be used by the Trustee as a guide only and that the Trustee is not in any way bound by [the] nomination when exercising its absolute discretion to pay [the] benefit in Intrust Super." According to appellant, after the decedent's death, the trustee "determined that the total death benefit of $300,687.93 was to be paid to the estate of the Decedent, rather than his father." The October 4, 2011 will did not specify a recipient of any death benefit received by the estate arising from the decedent's ownership of the Superannuation Fund, so under the residuary clause, Ashley and Victoria, rather than appellant, would receive any death benefit held by the estate.

Following the decedent's death, appellee filed an application seeking informal probate of the October 4, 2011 will. Appellant petitioned the court to set aside the October 4, 2011 will and to admit to probate the earlier September 23, 2011 will, which named him as the residuary beneficiary. Appellant alleged that the decedent lacked testamentary capacity at the time he executed the October 4, 2011 will and executed the will as the result of fraud, duress, undue influence, and misrepresentations perpetrated by Grunwell and appellee.

Appellee filed a motion for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that the decedent had the requisite capacity to execute a valid will on October 4, 2011, and that the will was not the result of fraud, duress, or undue influence. In support of the motion, appellee attached interrogatory answers in which he and Grunwell both denied that they urged the decedent to make or change any will. Appellee also attached a copy of a report written by the decedent's guardian ad litem, David H. Kinsman,[1] who explained that he met with Rosloniec, the decedent's physician, Dr. Tod Wyn, and a social worker at Faith Hospice, Mary Ann Strazanac, who all opined that the decedent was cognitively aware and capable of making informed decisions on October 4, 2011, when he met with his attorney. Strazanac reported that the decedent "asked not to be given additional medication for pain, as he wanted to be very clear headed when he met with his attorney," which Kinsman confirmed by reviewing the decedent's medical file.

In response, appellant offered his answers to several interrogatories, in which he stated that, on October 4, 2011, the "decedent was no longer aware he owned the Intrust Superannuation Fund, nor was he aware of the amount of the death benefit," the decedent "did not know the nature and extent of his property," and he "did not have the ability to understand in a reasonable manner the general nature and effect of his act in signing" the will. Appellant provided answers in which he stated that he discussed the Superannuation Fund with the decedent in November 2010, May 2011, and July 2011, and the decedent expressed that he hoped the "proceeds of the Fund" would help cover the debt appellant incurred by taking care of him. Appellant also provided an answer in which he stated that the decedent was "slurring his

---

[1] The probate court appointed a guardian ad litem for the decedent while he was still living after appellant filed a petition asking the court to appoint him as guardian over the decedent so he could make medical decisions for his son.

words and it was very difficult to maintain a conversation" on October 2, 2011. Finally, appellant provided answers to interrogatories from appellee and Grunwell, in which they stated that they believed the decedent "was aware that he made contributions to something in Australia, but wasn't sure what it was."

Following a hearing, the probate court concluded that appellant failed to present any evidence that Grunwell or appellee acted to unduly influence the decedent. The court also concluded that appellant failed to establish the existence of a genuine issue of material fact regarding the decedent's testamentary capacity because the evidence revealed that every person, other than appellant, including a physician, social worker, and the decedent's attorney, believed the decedent was capable of making his own decisions and executing legal documents up until and after the time he executed the October 4, 2011 will. The trial court thus granted appellee's motion for summary disposition.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision granting a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties in the light most favorable to the party opposing the motion." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). A trial court may grant the motion if the evidence shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.* When presenting such a motion, the movant has the initial burden of supporting his or her position with documentary evidence. *Id.* The burden then shifts to the nonmoving party to establish the existence of a disputed fact. *Id.* "Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id.* "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id.* at 363.

## III. DISCUSSION

The right to contest a will is statutory and a "contestant of a will has the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake, or revocation." MCL 700.3407(1)(c). Regarding the capacity needed to execute a will, MCL 700.2501 provides the following:

> (1) An individual 18 years of age or older who has sufficient mental capacity may make a will.

> (2) An individual has sufficient mental capacity to make a will if all of the following requirements are met:

> (a) The individual has the ability to understand that he or she is providing for the disposition of his or her property after death.

(b) The individual has the ability to know the nature and extent of his or her property.

(c) The individual knows the natural objects of his or her bounty.

(d) The individual has the ability to understand in a reasonable manner the general nature and effect of his or her act in signing the will.

To have testamentary capacity, a testator must "be able to comprehend the nature and extent of his property, to recall the natural objects of his bounty, and to determine and understand the disposition of property which he desires to make." *Persinger v Holst*, 248 Mich App 499, 504; 639 NW2d 594 (2001) (quotation marks and citations omitted). Stated another way,

> [i]f [the testator] at the time [he] executed the will, had sufficient mental capacity to understand the business in which [he] was engaged, to know and understand the extent and value of [his] property, and how [he] wanted to dispose of it, and to keep these facts in [his] mind long enough to dictate [his] will without prompting from others, [he] had sufficient capacity to make the will. A testator may be suffering physical ills and some degree of mental disease and still execute a valid will, unless provisions thereof are affected thereby. [*In re Ferguson's Estate*, 239 Mich 616, 627; 215 NW 51 (1927).]

This Court presumes that a testator had sufficient capacity to execute a will. *In re Skoog's Estate*, 373 Mich 27, 30; 127 NW2d 888 (1964). Whether a testator had sufficient capacity is "judged as of the time of the execution of the instrument, and not before or after, except as the condition before or after is competently related to the time of execution." *In re Powers' Estate*, 375 Mich 150, 158; 134 NW2d 148 (1965).

Appellant first argues that the decedent did not have the ability to know the nature and extent of his property and did not have the ability to understand in a reasonable manner the general nature and effect of his act in signing the will. In support of the motion for summary disposition, appellee provided the report of guardian ad litem Kinsman, who stated that he met with the decedent's physician, a social worker at Faith Hospice, and the decedent's attorney, and they all opined that the decedent was cognitively aware and capable of making legal decisions at the time he executed the October 4, 2011 will. Social worker Strazanac reported that the decedent "asked not to be given additional medication for pain, as he wanted to be very clear headed when he met with his attorney."

In response, appellant offered his answers to several interrogatories, in which he provided conclusory statements that, on October 4, 2011, the "decedent was no longer aware he owned the Intrust Superannuation Fund, nor was he aware of the amount of the death benefit," the decedent "did not know the nature and extent of his property," and he "did not have the ability to understand in a reasonable manner the general nature and effect of his act in signing" the will. Such conclusory allegations are insufficient to survive a motion for summary disposition that a moving party has supported with documentary evidence. See *Quinto*, 451 Mich at 370, citing MCR 2.116(G)(4) (explaining that a party opposing a motion for summary disposition under MCR 2.116(C)(10) must "set forth specific facts showing that there is a genuine issue for trial").

Appellant also provided answers in which he stated that the decedent was "slurring his words and it was very difficult to maintain a conversation" on October 2, 2011. However, this evidence does not pertain to the specific day the decedent executed the October 4, 2011 will, and appellant offers no proof that the decedent's condition was not merely the result of the decedent's use of pain medication, which he expressly declined before meeting with his attorney on October 4, 2011. See *In re Walz's Estate*, 215 Mich 118, 123-124; 183 NW 754 (1921) (explaining that evidence of "stupor induced by the use of drugs" is inconsequential to a determination of testamentary capacity unless it can be shown that such resulted in "actual, real, mental unsoundness *at the time of the testamentary act*") (emphasis added).

Appellant concedes that the decedent was aware of the Superannuation Fund and the associated death benefit up until July 2011. Considering the lack of evidence that the decedent's mental acuity had degenerated by October 4, 2011, and the guardian ad litem's report submitted by appellee, the trial court did not err by concluding that appellant failed to establish a genuine issue of material fact regarding whether the decedent had "the ability to know the nature and extent of his or her property." MCL 700.2501(2)(b).

Appellant argues that the decedent "did not understand that by making the October 4, 2011 Will the death benefit payable by the Intrust Superannuation Fund would be paid to his nieces under the residuary clause rather than to his father and aunt." Appellant points to the beneficiary designation form executed by the decedent, which identified appellant and Reichert as the nominated beneficiaries. He further points to his interrogatory answers in which he stated that the decedent told him on numerous occasions that he hoped the "proceeds of the Fund" would reimburse appellant for the debt appellant incurred by taking care of the decedent.

It is not clear from the record the extent to which the decedent understood that if the Australian trustee did not comply with his beneficiary nominations, the death benefit arising from his ownership of the Superannuation Fund could become an asset of his probate estate. However, the inquiry regarding testamentary capacity is only concerned with whether the testator "has *the ability to* understand" the general nature of the act of signing a will. MCL 700.2501(2)(d) (emphasis added). See also *In re Sprenger's Estate*, 337 Mich 514, 521; 60 NW2d 436 (1953) (explaining that a person must "*be able to* . . . determine and understand the disposition of property which he desires to make" to possess sufficient testamentary capacity). To the extent the decedent may or may not have known that an Australian trustee could disregard his beneficiary nominations resulting in the death benefit being paid to his probate estate, this says nothing about the decedent's mental capacity to *have the ability* or to *be able to* understand the effect of his act of signing the will. It is unreasonable to suggest that a testator's testamentary capacity could be defeated, despite his or her soundness of mind, in any case in which the testator possesses an asset expected to pass outside of probate, but, for one reason or another, that asset eventually becomes part of the probate estate. Moreover, appellant's interrogatory answers, which relayed that the decedent allegedly told him that he wanted appellant to receive the death benefit as a reimbursement, say nothing about the decedent's mental capacity at the time he executed the October 4, 2011 will. Under the circumstances, the trial court did not err by concluding that appellant failed to establish a genuine issue of material fact regarding whether the decedent had "the ability to understand in a reasonable manner the general nature and effect of his or her act in signing the will." MCL 700.2501(2)(d).

Finally, "[t]o establish undue influence it must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will." *In re Karmey Estate*, 468 Mich 68, 75; 658 NW2d 796 (2003) (quotation marks and citation omitted). Appellant argues that the circumstances surrounding the execution of the October 4, 2011 will were sufficient to establish a genuine issue of material fact regarding undue influence. Appellant cites the fact that the decedent executed the will 11 days after executing a previous will, that he named his two nieces as residuary beneficiaries, and that he was "under the care of" Grunwell and appellee at the time he executed the will. Appellant cites no authority suggesting that these circumstances could support a claim of undue influence, thus abandoning the issue on appeal. See *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999) ("[W]here a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned."). In any event, opportunity, motive, or the ability to control, without proof that such was in fact exercised, is insufficient to establish undue influence. *Karmey*, 468 Mich at 75. Therefore, the court did not err by granting appellee's motion for summary disposition.

Affirmed.

/s/ Michael F. Gadola
/s/ Michael J. Talbot
/s/ Elizabeth L. Gleicher