*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MADISON GRINNELL, individually, and as trustee of the LYNDEN GRINNELL FAMILY TRUST,

UNPUBLISHED
November 4, 2021

Plaintiff-Appellant,

v

No. 356122
Lenawee Probate Court
LC No. 20-051226-CZ

JENNIFER M. BLUMHARDT,

Defendant-Appellee.

Before: STEPHENS, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court orders granting summary disposition in defendant's favor and dismissing her complaint. We affirm.

Lynden Grinnell (Lynden), father of Madison Grinnell and settlor of the Lynden Grinnell Family Trust ("the Trust"), was in a long-term relationship with defendant when, in early 2018, he was diagnosed with terminal cancer. Within weeks of his diagnosis, Lynden and defendant married. Thereafter, Lynden and defendant met with an attorney and signed documents granting defendant medical and durable power of attorney with respect to Lynden, changing the beneficiaries on Lynden's life insurance policy to defendant, and naming defendant as trustee of the Trust. Lynden also signed a will that the attorney had prepared. Lynden passed away approximately six weeks after his diagnosis.

Plaintiffs initiated the instant lawsuit against defendant in March 2019 asserting that defendant's marriage to Lynden and the later changes to his powers of attorney, life insurance beneficiaries and trustee were the due to defendant's undue influence. Plaintiffs further alleged that defendant breached her fiduciary duties, and converted personal property that had been gifted to others to her own use. Defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (10), asserting that the challenged documents were prepared by an attorney and signed by Lynden at the attorney's office with both defendant and Madison Grinnell present. Defendant thus denied that she exercised any undue influence over Lynden, and further denied that there was a

-1-

fiduciary or confidential relationship between she and Lynden and denied that she converted any personal property. The court held a hearing on defendant's motion for summary disposition, after which it entered an order (without explanation or elaboration) dismissing plaintiffs' claims of undue influence and breach of fiduciary duty. Only the conversion claim remained.

Defendant thereafter moved for summary disposition on the conversion claim under MCR 2.116(C)(8) and (10), asserting that the single asset in the Trust, per the Trust documents was the marital home, which defendant relinquished to plaintiffs, and that nothing provided for the disposition of any tangible personal property to plaintiffs. Moreover, discovery had closed and plaintiffs had neither identified nor testified to any personal property that defendant kept but that actually belonged to plaintiff or the estate. The trial court dismissed the conversion claim pursuant to MCR 2.116(C)(10). This appeal followed.

On appeal, plaintiffs assert that the court should not have dismissed plaintiffs' claims of undue influence and breach of fiduciary duty pursuant to MCR 2.116(C)(8) because those claims were properly pleaded. Plaintiffs further argue that the court erred in dismissing all of the claims under MCR 2.116(C)(10) because defendant did not meet her burden of establishing that there were no material questions of fact concerning the claims. We disagree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Estate of Voutsaras by Gaydos v Bender*, 326 Mich App 667, 671; 929 NW2d 809 (2019). First and foremost, it is not clear whether the trial court granted summary disposition in defendant's favor on plaintiffs' claims of undue influence and breach of fiduciary duty under MCR 2.116(C)(8) or (10). While plaintiffs premise their argument on the trial court granting defendant's motion under MCR 2.116(C)(8) (failure to state a claim on which relief may be granted) defendant attached many, many documents to her brief in support of summary disposition and plaintiffs attached defendant's deposition transcript to their response. Thus, we will treat the motion as if granted under MCR 2.116(C)(10). As to plaintiff's claim of conversion, the trial court specifically stated, "I do find it is appropriate . . .to dismiss the claims under (C)(10)."

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Bernardoni v City of Saginaw*, 499 Mich 470, 472–73; 886 NW2d 109 (2016). In reviewing such a motion, the trial court "considers all affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. at 472-473. MCR 2.116(G)(4) requires, when the moving party supports its argument with substantively admissible evidence, that the adverse party establish a genuine issue of fact through affidavits or other documentary evidence. *Id*. at 473.

One of the stated purposes of Michigan's Estates and Protected Individuals Code is to "discover and make effective a decedent's intent in distribution of the decedent's property." MCL 700.1201(b). This is best done by examination of executed testamentary documents as a whole and harmonize all provisions, if possible, to the stated intent. *In re Estate of Bem*, 247 Mich App 427, 434; 637 NW2d 506 (2001). However, "undue influence" exercised upon one who executes a testamentary document may become the basis for finding the document invalid "*if that influence took from the testator his right to freely exercise his discretion*" in disposing of his or her property. *In re Mardigian Estate*, 502 Mich 154, 160; 917 NW2d 325 (2018) (emphasis in original; citation

omitted).  In other words, undue influence is necessarily something that destroys the free agency of the testator at the time when the instrument is made.

As stated in *In re Mardigian Estate*, 502 Mich at 160–61:

To establish undue influence it must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will. Motive, opportunity, or even ability to control, in the absence of affirmative evidence that it was exercised, are not sufficient. [citation omitted]

The burden of establishing undue influence is on the party asserting it.  *Id*. at 160.  But there are situations where a presumption of undue influence has been found.  A presumption of undue influence occurs when evidence is introduced which would establish:

(1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary or an interest which he represents benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction. [*In re Estate of Karmey*, 468 Mich 68, 73; 658 NW2d 796 (2003) (citation omitted)]

Notably, "confidential or fiduciary relationship" is a legal term of art that is not applicable to marriage. *Id*. at 75.

Defendant testified that she and Lynden began a romantic relationship in 2010 when they met at work and that she moved in with him in 2013.  She testified that she did not officially change her mailing address, however, until 2017.[1]  The documentary evidence establishes that defendant and Lynden got married on February 10, 2018.  Defendant's durable power of attorney was executed on February 15, 2018 at attorney Mark Bruggeman's office, with defendant and plaintiff Madison Grinnell both signing the document to accept their respective designations.  The same holds true with respect to the medical durable power of attorney and patient advocate designation of Lynden.  Lynden also executed a will, "The Lynden Grinnell Family Trust," and insurance beneficiary documents at attorney Bruggeman's office on February 15, 2018.  Because all relevant documents were executed after defendant and Lynden's marriage, there is no presumption of undue influence. *In re Estate of Karmey*, 468 Mich at 75.  Plaintiff has not otherwise established any undue influence exercised by defendant over Lynden that would serve to destroy Lynden's free will.

Attorney Mark Bruggeman swore in his affidavit that he met with Lynden for the purpose of estate planning and that Lynden was competent and coherent to execute the documents. Bruggeman swore that Lynden knew he was married to defendant, knew who his children were,

---

[1] Plaintiffs make much of the date concerning defendant's change of address but do not otherwise dispute that defendant and Lynden were in a long-term romantic relationship or that defendant moved in with Lynden prior to 2017.

and knew what the provisions of the documents provided for defendant and his children. Bruggeman further swore that Madison Grinnell was present during the discussion and signing of the documents. Defendant testified consistent with Attorney Bruggeman's affidavit and further testified that Lynden was on pain medication after his terminal cancer diagnosis, but was fully aware of everything going on.

While Madison Grinnell testified at deposition that Lynden did not know what he was doing when he signed the documents, this deposition was not presented to the trial court in response to defendant's first motion for summary disposition. The affidavits of Lynden's brother, Madison Grinnell, and Lynden's other (minor) daughter were all presented to the trial court and all stated that Lynden did not know what was happening for much of the last several weeks due to pain medication, and that defendant exercised influence over him while he was medicated. However, there is no indication what "several weeks" means and no mention of what, specifically, defendant allegedly said or did to influence Lynden. Moreover, all three swore that Lynden and defendant got married (on February 10, 2018) while Lynden was heavily medicated and in hospice care. Yet, Madison Grinnell testified at her deposition that she attended Lynden and defendant's wedding that took place at the Moose Lodge with many guests present and that hospice was not called in until after the wedding.[2] Moreover, it is undisputed that Lynden physically went to Attorney Bruggeman's office on February 15, 2018, that Madison Grinnell was present at the attorney's office and signed certain of the documents herself, and that she raised no objections to the documents at that time. The assertions that Lynden was in hospice at the time of his wedding are thus unavailing.

Finally, plaintiffs, as the moving parties, had the burden of establishing undue influence and provided no medical documents or other documents establishing that Lynden was heavily medicated at the time he signed the documents, let alone to the point where he had no idea what was going on. Plaintiffs have thus failed to establish that Lynden was subject to "threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel [him] to act against his inclination and free will." *In re Mardigian Estate*, 502 Mich at 160–61. The trial court thus properly granted summary disposition in favor of defendant on the claim of undue influence.

The same is true for plaintiffs' claim of breach of fiduciary duty. Again, "confidential or fiduciary relationship" is a legal term of art that is not applicable to marriage. *In re Estate of Karmey*, 468 Mich at 75. There being no cognizable argument that defendant, as Lynden's wife at the time the challenged documents were signed, had a fiduciary relationship with Lynden, there can be no cognizable claim of breach of fiduciary duty.

With respect to their claim of conversion, plaintiffs contend that material questions of fact remained as to whether defendant took personal property and assets of Lynden's that belonged in the Trust and converted it for her own use. We disagree.

Lynden created the Trust on February 15, 2018. The Trust document provides that all Trust assets were to be held for defendant's use for a period of five years after Lynden's death, provided

---

[2] Defendant testified that hospice came to care for Lynden at their home in March 2018.

she paid all of the costs associated with such assets, because it was Lynden's intent to provide defendant with a place to live for that period. After the five-year period, Madison Grinnell was to become the successor trustee of the trust and the trust assets were to be divided between she and her sister. On the same date the Trust was created, Lynden quitclaimed his home to the Trust and executed his will. His will states that he has prepared or may prepare a written list to dispose of certain items of his tangible personal property to a certain person or persons and, if so, he directs his personal representative to make such distributions after his death. The will further provides "all the rest of my estate I give to The Lynden Grinnell Family Trust dated February 15, 2018."

On July 5, 2018, four months after Lynden's death, Madison Grinnell and her sister sent a letter to defendant indicating that they were being evicted from their home and were in a need of place to live. Defendant resigned as trustee of the Trust as of October 1, 2018, forwent her interest in the trust as of that date, and vacated the home. Later the same month, Madison Grinnell and her sister requested that defendant return to them birthday and Christmas gifts that Lynden gave to them but were not left in the home when they moved in. Madison Grinnell specified several of these gifts and also requested items that Lynden purportedly gifted to them prior to his death. On November 1, 2018, Attorney Bruggeman responded by indicating that defendant's spousal elections to which she was entitled as Lynden's widow included the requested items.

The only specific asset that was transferred into the Trust was the home, which Madison Grinnell and her sister moved into on or before October 1, 2018. While the will provided that Lynden may provide a handwritten list of items he intended to give to certain person on his death, no such list appears to have been made. The will also provided that "all the rest of my estate I give to The Lynden Grinnell Family Trust dated February 15, 2018." Unfortunately, there was no probate estate opened. Thus, there is no way to know what the rest of Lynden's estate consisted of. There is thus also no way to know what assets, if any (besides the house) would be made part of the Trust assets through the will's pour over provision, specifically given that defendant was Lynden's widow and would be able to take at least a homestead allowance up to $15,000 (MCL 700.2402) and household furniture, automobiles, furnishings, etc. up to $10,000 (MCL 700.2404). There is no written claimed value of the items provided to show that they would exceed the value of the spousal elections.

At the hearing on defendant's motion for summary disposition, plaintiffs' counsel asserted for the first time that the value of the claimed items was $16,344.94, but provided no documentary evidence to support the assertion. As a result, plaintiffs cannot prove that defendant converted any personal items to her own use that were supposed to be in the Trust.

In granting summary disposition on plaintiffs' conversion claim, the trial court specifically stated that plaintiffs' counsel provided the $16,000 or so value and, assuming that those items were part of Lynden's estate, and even if plaintiffs' counsel "were to somehow convince a jury that he would be entitled to that amount, I do not find that given the value of the life estate and the exemptions in the estate that would go to [defendant] immediately that there would be any point in putting that to a jury." The trial court also stated that there were procedures in place "for transfer of property in this situation that are designed and built into estate planning documents like the ones that were drafted here where the pour over trust must be in operation to deliver personal property to the trust." The trial court indicated that plaintiffs could go through the proper procedures set forth in the Probate Code by first opening up the estate and then trying to establish valuation of

personal property they claimed should be theirs. The court was correct. If plaintiffs wish to prove that certain tangible personal property was theirs and not part of Lynden's estate, they have to open Lynden's estate to claim them.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ David H. Sawyer
/s/ Deborah A. Servitto