*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

MARK L. WILKIE, Trustee of the MARK L.
WILKIE REVOCABLE TRUST,

        Plaintiff-Appellee/Cross-Appellant,

v

PETER B. STANO, also known as PETER STANO,

        Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
May 15, 2026
1:58 PM

No. 370496
Wayne Circuit Court
LC No. 20-016171-CB

---

Before: TREBILCOCK, P.J., and CAMERON and LIEVENSE, JJ.

PER CURIAM.

Defendant, Peter B. Stano, appeals as of right from the trial court's final judgment in favor of plaintiff, Mark L. Wilkie, following a two-day bench trial in this collection action in which plaintiff alleged that defendant breached the terms of a loan guaranty. Plaintiff has filed a cross-appeal from the same judgment. For the reasons set forth in this opinion, we affirm in part, vacate in part, and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a failed commercial business venture. In 2004, plaintiff and defendant, together with a third party, Dwight Dodge, formed a limited-liability company, Uptown Ridge Investors, LLC (URI), for the purpose of purchasing and developing real property in Canton Township, Michigan. Under URI's operating agreement, all three initial members had a ⅓ interest in the company, and any losses were to be allocated equally among them. Defendant was also the manager of URI.

In July 2005, under the terms of a loan agreement between URI and plaintiff, URI borrowed from plaintiff $200,000 to purchase real property, commonly known as 525 North Ridge Road, in Canton Township, for commercial development. To secure the loan, all three members signed separate loan guaranties in which they agreed to assume personal liability for "any and all" of URI's "existing and future [] indebtedness and liabilities of every nature and kind . . . " arising out of the loan agreement. Plaintiff also received a $200,000 mortgage interest in the property to secure a mortgage note URI executed.

-1-

URI planned to develop 525 North Ridge Road to include a pub, a multifamily residential building, and commercial buildings. However, from the beginning, the project was delayed and required additional expenses. Thus, after purchasing the property, plaintiff continued to advance loans to URI. After receiving approval from Canton Township in 2008 to build within a six-year time frame, construction had still not begun by 2014. Plaintiff decided to stop lending money to URI for the project after he determined "[t]here was no way to make money on that development[.]" From 2008 to 2019, plaintiff was allocated 100% of URI's losses which he claimed on his personal tax returns. According to plaintiff, all three members of URI agreed plaintiff would be allocated the losses.

On July 20, 2020, Dodge assigned his membership interest in the company to plaintiff. In December 2020, plaintiff filed this suit against defendant to enforce the guaranty (not the other contracts), seeking to recover the money plaintiff loaned to URI, including the balance on the mortgage, accrued interest, additional accrued interest, and costs. Plaintiff alleged that he had made significant contributions to facilitate URI's "acquisition, development and maintenance of" 525 North Ridge Road, with a principal loan balance of $809,000, and accrued interest of $496,421.63. Plaintiff also alleged that he had advanced additional funds to URI, including $5,433.82 in real estate taxes, demolition costs of $15,825, and additional accrued interest in the amount of $130,000.

The parties both filed motions for summary disposition under MCR 2.116(C)(10) (no genuine dispute of material fact). Defendant did not argue that the statute of limitations barred plaintiff's case. The trial court ruled that under the terms of the loan agreement, defendant's personal liability was capped at $200,000. Plaintiff applied for leave to appeal that order, and this Court peremptorily reversed in part and remanded the case, holding that the plain language of the guaranty extended to both the initial $200,000 loan and "other loans, interest, attorneys fees, costs, and other expenses, as stated in the plain language of the guaranty itself." *Wilkie v Stano*, unpublished order of the Court of Appeals, entered May 30, 2023 (Docket No. 364553).

A bench trial on remand commenced in January 2024. At the close of plaintiff's proofs, defendant moved for a directed verdict on the grounds that the statute of limitations barred plaintiff's claims. Defendant argued that plaintiff stopped funding the construction project in 2012, which constituted default under the terms of the loan agreement and required plaintiff to file a complaint by 2018 under MCL 600.5807. The trial court denied defendant's motion.

Defendant offered evidence that the loans plaintiff made to URI were actually capital contributions that were not required to be repaid. After the bench trial concluded, the trial court determined that the statute of limitations was "not applicable to contracts in this case," and that plaintiff did not breach any contract. It also determined that under the guaranty, defendant was required to repay plaintiff, that the total indebtedness on the loan balance was $1,691,855.61 (through January 16, 2024), and that defendant's proportionate (⅓) share was $563,961.87.

Including attorney fees, which plaintiff was entitled to under the operating agreement, the trial court found defendant's total indebtedness was $649,628.62. However, the court deducted from that amount ½ of the alleged $228,845 benefit plaintiff had received from taking tax losses ($114,422.50). Defendant was held liable for $535,204. Defendant now appeals as of right, and plaintiff cross-appeals.

## II.  DEFENDANT WAIVED THE STATUTE OF LIMITATIONS DEFENSE AND THE TRIAL COURT CORRECTLY DENIED DEFENDANT'S MOTION

Defendant's first two arguments are related.  He first argues that the trial court erred by determining that the statute of limitations did not bar plaintiff's claim, either because defendant waived the argument or that it did not apply based on the facts.  He also argues that the trial court erred when it denied his motion for involuntary dismissal on statute of limitations grounds.  We disagree on both points.

### A.  STANDARD OF REVIEW

In the trial court, defendant listed the statute of limitations as an affirmative defense in his first responsive pleading but did not raise it until he moved for a directed verdict during trial, asserting that plaintiff's claims were time-barred.  While defendant called his motion as one seeking a directed verdict, a motion for a directed verdict in a bench trial is treated as a motion for involuntary dismissal under MCR 2.504(B)(2).  *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995).  This Court reviews the trial court's decision on a motion for involuntary dismissal for clear error.  *Id*. at 426.  The trial court's decision is clearly erroneous if, while there may be evidence to support the trial court's decision, this Court is left with a definite and firm conviction that the trial court made a mistake.  *Id*.

That said, the trial court's ruling on the statute of limitations implicates a question of law, which this Court reviews de novo.  *Collins v Comerica Bank*, 468 Mich 628, 631; 664 NW2d 713 (2003).  Also, because these issues call into question the trial court's interpretation of contractual agreements, this Court's review is de novo.  *Able Demolition, Inc v Pontiac*, 275 Mich App 577, 581; 739 NW2d 696 (2007).

### B.  ANALYSIS

The trial court concluded in its written order that the "Statute of Limitations is not applicable to contracts in this case," but did not articulate whether that was because defendant waived the argument or because plaintiff's claim was not time-barred as a matter of fact.  Regardless, we agree with the trial court's conclusion.

To the extent that defendant raised the statute of limitations as an affirmative defense, he bore the burden of introducing evidence to support that defense.  *Palenkas v Beaumont Hosp*, 432 Mich 527, 548; 443 NW2d 354 (1989).  A party merely asserting bare legal conclusions will not amount to adequately raising a defense.  *Id*. at 548.  It is only when evidence has been introduced that tends to establish that the cause of action was barred by the statute of limitations that the burden will then shift to the plaintiff to produce clear and convincing evidence to negate the bar.  *Id*. at 550.

In *Palenkas*, 432 Mich at 551, our Supreme Court observed that the defendant hospital had neglected to include factual allegations in its answer in support of its assertion of the affirmative defense of the statute of limitations, it did not move for summary disposition on the basis of the statute of limitations, and at trial it did not present evidence in its case-in-chief on the applicability of the affirmative defense.  *Id*.  Under such circumstances, our Supreme Court concluded that the

defendant hospital had "abandoned its affirmative defense of the expiration of the statute of limitations . . . ." *Id*.

Similarly, in *Attorney General ex rel Dep't of Environmental Quality v Bulk Petroleum Co*, 276 Mich App 654, 665; 741 NW2d 857 (2007), this Court observed that the statute of limitations is an affirmative defense subject to waiver, and such a waiver is established by a showing of a course of action and conduct and may be implied from such circumstances. In that case, this Court held that the defendants' failure to raise the issue in response to the plaintiffs' motion for summary disposition or to raise the issue during a hearing regarding penalties levied against them amounted to a waiver of that defense. *Id*.

Here, defendant was required to state his affirmative defenses in a responsive pleading and, under a separate and distinct legal heading, state the facts constituting an affirmative defense. MCR 2.111(D)(3)(a). While he listed the statute as barring plaintiff's claims, like the defendant hospital in *Palenkas*, 432 Mich at 551, defendant here did not state the facts to support his defense. During discovery in 2021, plaintiff sent an interrogatory to defendant asking for the factual and legal bases for the affirmative defense, and defendant responded as follows: "the Loan Agreement was executed on July 7, 2005 and the breach occurred shortly thereafter." Defendant did not specify what facts supported that the statute of limitations began accruing, or what constituted a breach of the *guaranty*, which was the subject of the lawsuit. Later, in 2022, defendant moved for summary disposition, arguing that plaintiff's complaint should be dismissed because it was premature, because he did not yet know his damages. Defendant did not claim that the statute of limitations barred the suit, nor did he raise the issue in response to plaintiff's motion for summary disposition. See *Attorney General*, 276 Mich App at 665. It was not until trial, after plaintiff conceded that a meeting with defendant in 2012 where plaintiff stated he would no longer fund the project "conceivably" could have occurred, that defendant argued in support of an involuntary dismissal motion that plaintiff's potential breach of the loan agreement (not the guaranty) in 2012 meant plaintiff's 2020 complaint to enforce the guaranty was too late.

In response, the trial court agreed to "indulge" defense counsel but stated that defendant had essentially "waived" the affirmative defense. The trial court ultimately denied the motion because "reasonable minds can differ" on whether plaintiff's claim accrued in 2012, and it did not specifically address the waiver issue. And in its final judgment, the trial court ruled that the statute of limitations did not apply, appearing to substantively decide the issue.

We, however, conclude that defendant waived the statute of limitations defense. Thus, we affirm the trial court's final order because it reached the correct result, despite its unclear reasoning. *Bronson Health Care Group, Inc v State Auto Prop & Cas Ins Co*, 330 Mich App 338, 342 n 3; 948 NW2d 115 (2019) (this Court may affirm a decision of the trial court if it was correct, even if the decision was based on different reasoning).

But even if defendant did not waive the issue, the trial court correctly denied defendant's motion for involuntary dismissal on statute of limitations grounds on this record. The trial court may involuntarily dismiss an action if it, as the finder of fact, is satisfied following the close of the plaintiff's proofs that the plaintiff has not established a right to relief. *Begola Serves*, 210 Mich App at 639; MCR 2.504(B)(2). In deciding a motion for involuntary dismissal, the trial court exercises its function as the trier of fact, weighs the evidence, determines the credibility of

-4-

witnesses, and chooses between competing inferences. *In re ASF*, 311 Mich App 420, 427; 876 NW2d 253 (2015).

While defendant faults the trial court for applying the directed verdict legal standard, the record reflects that the trial court adequately determined whether the facts and the law supported plaintiff's right to relief. *Begola Servs*, 210 Mich App at 639. The trial court weighed the evidence it had heard and determined that defendant had not established that the statute of limitations barred plaintiff's claims. *In re ASF*, 311 Mich App at 427. It did not clearly err in denying defendant's motion and finding that the statute of limitations did not bar plaintiff's claims.

## III. THE TRIAL COURT DID NOT ERR IN CONCLUDING PLAINTIFF DID NOT BREACH A CONTRACT

In defendant's next two issues he argues that the trial court erred in concluding that plaintiff did not first breach a contract or make some other misrepresentation. We disagree.

### A. STANDARD OF REVIEW

The trial court's factual findings following a bench trial are reviewed for clear error. *Avery v Michigan*, 345 Mich App 705, 715; 9 NW3d 115 (2023). The trial court's factual findings are clearly erroneous if they lack evidentiary support or if this Court is left with a definite and firm conviction that the trial court made a mistake. *Id*. at 715-716. In reviewing the trial court's factual findings, this Court will defer to the superior ability of the trial court to gauge the credibility of witnesses who appeared before the court. *Id*. at 716. In contrast, the trial court's legal conclusions following a bench trial are reviewed de novo. *Id*. at 715. To the extent these issues require this Court to review the trial court's interpretation of contractual agreements, this Court's review is de novo. *Able Demolition*, 275 Mich App at 581.

### B. ANALYSIS

It is settled law in Michigan that the party who first breaches a contract is precluded from maintaining a cause of action against the opposing party to the contract for his subsequent breach or failure to perform. *Id*. This rule only applies if the initial breach was "substantial." *Id*. In making a determination regarding whether a substantial breach occurred, this Court weighs whether the nonbreaching party obtained the benefit that he or she reasonably expected to receive. *Id*. This Court will give "close scrutiny" to a claim that a substantial breach occurred, and the rule will only apply in circumstances "where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible . . . ." *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964) (citations omitted).

Defendant argues that plaintiff first breached the loan agreement between plaintiff and URI, and URI's operating agreement, when he "decided on October 17, 2012, to not move forward and refused to allow the company to proceed with construction."

But that is not what plaintiff "decided." Instead, plaintiff testified that in late 2012 he decided he did not want to loan URI more money. The loan agreement reflected that URI initially

borrowed $200,000 from plaintiff to purchase real property and develop a commercial building project. And it delineated what constituted an "event of default," including misrepresentation, failure on the part of URI to perform its obligations under the loan agreement, failure of URI to construct diligently, failure of URI to pay moneys due, involuntary or voluntary bankruptcy on the part of URI, or judgments entered against URI involving aggregate liability of $10,000 or more. Similarly, URI's operating agreement stated its purpose was the purchase and commercial development of real property.

But while plaintiff loaned URI more than the initial $200,000, defendant does not say how declining to loan URI more money was a breach of either contract, let alone of the guaranty. Instead, the loan agreement refers to obligations and responsibilities *on the part of URI* that if not performed, would amount to events of default on URI's part. Put simply, our review of the loan agreement does not yield language indicating that plaintiff breached it by not advancing further loans. Similarly, a review of the operating agreement does not reflect that the failure to loan money breached any portion of the agreement and there is no known evidence that URI issued a capital call that plaintiff violated. "A fundamental tenet of [Michigan] jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written." *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005). This Court will not read into the plain language of a contract words and terms that the parties did not include. *Northline Excavating, Inc v Livingston Co,* 302 Mich App 621, 628; 839 NW2d 693 (2013).

Therefore, without having located language that supports defendant's argument that plaintiff first engaged in a breach, let alone a "substantial" one that deprived defendant of something he reasonably expected to receive, we conclude that his position is without merit. The lack of additional loans may have slowed (and contributed to ending) URI's project, but the trial court did not clearly err in concluding that plaintiff had not substantially breached a contract.

Defendant relatedly argues that the trial court erred by enforcing the guaranty because defendant signed it under undue influence due to plaintiff's misrepresentations. We disagree.

Under Michigan law, the party asserting that undue influence invalidates a legal instrument bears the burden of establishing it. *In re Sprenger's Estate*, 337 Mich 514, 522; 60 NW2d 436 (1953). Our Supreme Court explained in *In re Karmey Estate*, 468 Mich 68, 75; 658 NW2d 796 (2003) (quotation marks and citation omitted), the manner in which undue influence may be established:

> To establish undue influence it must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will. Motive, opportunity, or even ability to control, in the absence of affirmative evidence that it was exercised, are not sufficient.

Defendant argues that when plaintiff signed a loan guaranty promising to repay his share of URI's indebtedness, plaintiff essentially tricked him into executing his own guaranty, constituting a misrepresentation. In *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562

(2012) (quotation marks and citation omitted), our Supreme Court set forth the factors that must be established to successfully support a claim of misrepresentation:

> [T]he general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.

All three URI members signed a guaranty of plaintiff's loan to URI on July 7, 2005, around the same time they signed other documents to acquire the property. Defendant says he never would have signed his guaranty if plaintiff and Dodge had not done so, and that plaintiff's guaranty was worthless. However, in determining whether defendant's loan guaranty should be invalidated on the basis of undue influence, the question is whether defendant established that he was subjected to a misrepresentation that would have overpowered his personal volition and compelled defendant to act against his own free will. *In re Karmey Estate*, 468 Mich at 75.

Here, the trial court did not clearly err in concluding, based on the evidence, that defendant's guaranty "was freely and voluntarily executed and delivered by Defendant . . . to secure any and all existing and future indebtedness and liability of every nature and kind now or hereafter owing" by URI. Put simply, nothing in the record indicates plaintiff falsely represented anything to get defendant to execute the guaranty. *Titan Ins Co*, 491 Mich at 555. Instead, the record reflects that defendant, as managing member of URI, was well aware that plaintiff loaned $200,000 to URI, and that all three members of the limited-liability company, including plaintiff, signed a loan guaranty to personally guarantee the debt. It appears from the record that plaintiff signed the loan guaranty, in part, to demonstrate that he was liable for URI's debt and to reflect that each URI member was responsible for their ⅓ share in the limited-liability company. Nothing was hidden. There is no evidence of misrepresentation, and the trial court did not clearly err by enforcing the loan guaranty.[1]

## IV. THE TRIAL COURT ERRED IN DEDUCTING THE TAX BENEFIT PLAINTIFF RECEIVED FROM DEFENDANT'S LIABILITY

Finally, in its judgment, the trial court reduced the amount defendant owed plaintiff to purportedly reflect the tax benefit plaintiff received by taking 100% of URI's tax loss during some

---

[1] Plaintiff contends that the law-of-the-case doctrine applies because this Court determined in an earlier appeal that defendant was liable under the guaranty for both existing and future indebtedness. *Wilkie v Stano*, unpublished order of the Court of Appeals, entered May 30, 2023 (Docket No. 364553). But this Court only decided the potential scope of damages for a breach, not whether plaintiff breached, or whether the guaranty was otherwise invalid. Therefore, the law-of-the-case doctrine does not apply here.

time period. The trial court used defendant's claimed total tax benefit amount, $228,845, and divided that in half, thus reducing the judgment by $114,422.50. Neither side agrees, with defendant arguing that the trial court should have reduced the judgment by the entire $228,845, and plaintiff arguing that no reduction should have occurred, or that the amount was wrong. We agree with plaintiff that no reduction should have occurred.

## A. STANDARD OF REVIEW

Whether the tax losses URI allocated to plaintiff should be deducted from defendant's liability under the loan guaranty presents a question of contract interpretation that is reviewed de novo. *Able Demolition*, 275 Mich App at 581. To the extent this Court reviews the calculation of the amount the trial court credited defendant, this presents a question of fact this Court reviews for clear error. *Avery*, 345 Mich App at 715.

## B. ANALYSIS

Plaintiff sued defendant under the 2005 guaranty to recover a share of what URI owed plaintiff. At some later time, URI's members apparently agreed that all of URI's tax losses would be allocated to plaintiff. As a result the plain language of the loan guaranty did not address or contemplate whether the benefit of URI's tax losses to plaintiff reduced defendant's potential liability.

In this context, the trial court inaccurately interpreted the applicable contracts when it reduced the amount defendant owed plaintiff on the basis of plaintiff having benefited from receiving the tax losses. If the parties had intended for URI's tax loss allocation to be credited for or against any party when determining the amount owed, the guaranty or some other contract could have included provisions to that effect. But they did not. This Court will not read into the contracts terms the parties did not agree to, *Northline Excavating*, 302 Mich App at 628, particularly when there is evidence that the parties affirmatively agreed that plaintiff would receive these tax benefits.

Defendant claims that accounting for the tax benefit plaintiff received is a form of mitigation of damages, citing *Edgecomb v Traverse City Sch Dist*, 341 Mich 106, 110; 67 NW2d 87 (1954), for the rule that in breach of contract cases "the injured party must make every reasonable effort to minimize the damages suffered." But, as agreed to, plaintiff received these tax benefits regardless, before anyone knew there would be any damages, and they were not part of plaintiff mitigating his damages. Plaintiff was to receive these benefits if URI's development succeeded, and defendant does not explain why he or anyone else should get the benefit of plaintiff's tax benefit because the development failed. Instead, plaintiff testified at trial that the reason he was allocated 100% of URI's tax losses was because he, Dodge, and defendant had agreed to such action, and defendant does not dispute this. The trial court cutting the $228,845 figure in half (rather than thirds) further illustrates its error in interpreting the parties' agreements and the evidence. Doing so conflicts with the parties' agreement regarding allocation, it ignores the third initial business partner (who the court did not allocate any tax loss benefit), and the trial court did not explain the reasons for its decision.

Therefore, the terms of the parties' agreements and the evidence do not support a factual finding or legal conclusion that the tax losses were intended to minimize defendant's potential

liability. Accordingly, because the governing legal document between the parties did not address the issue of the allocation of tax losses and how they impacted any liability on the part of defendant, we conclude that the trial court erred in reducing defendant's liability by $114,422.50.[2]

We therefore vacate this portion of the trial court's March 26, 2024 judgment.

## V. CONCLUSION

We affirm in part and vacate in part the trial court's judgment and remand to allow the trial court to correct the amount of defendant's liability in the judgment. We do not retain jurisdiction.

/s/ Christopher M. Trebilcock
/s/ Thomas C. Cameron
/s/ Andrew J. Lievense

---

[2] Further, while unnecessary given the Court's ruling, we note that the only thing defendant cites to support the $228,845 figure is his own estimate in his "Statement of Defenses and Legal Theories" included in the Final Pretrial Order. This amount was offered only during closing argument and there is no evidence supporting it in the record. Statements made during closing argument are not evidence, *Guerrero v Smith*, 280 Mich App 647, 658-659; 761 NW2d 723 (2008), plaintiff's certified public accountant testified he did not know how much plaintiff saved on his taxes, and plaintiff's tax returns are not in the record.