# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* RINGER ESTATE.

---

MIRIAM ADAM, Personal Representative of the
Estate of CLAUDE R. RINGER,

UNPUBLISHED
March 20, 2018

Appellee,

v

No. 336884
Ingham Probate Court
LC No. 16-000242-DE

DEBORAH ELISSADEH,

Appellant.

---

Before: SAWYER, P.J., and BORRELLO and SERVITTO, JJ.

PER CURIAM.

Appellant, Deborah Elissadeh, appeals as of right an order granting summary disposition in favor of Elissadeh's sister, appellee and personal representative Miriam Adam, in an inheritance dispute concerning Adam's alleged undue influence over their mother, Claude Ringer. The motion was granted pursuant to MCR 2.116(C)(10) (no genuine issue of material fact) based on a determination that Elissadeh had not offered evidence countering the rebuttal of a presumption of undue influence. We affirm.

## I. FACTS

Claude Ringer died on January 9, 2016. Elissadeh objected to Ringer's 2007 will and 2012 codicil, and petitioned the probate court for an order setting them aside, requesting that her mother's 2002 will be admitted to probate. Ringer's 2002 will included gifts to both daughters, each of Elissadeh's three children, and a niece. Under the 2007 will and 2012 codicil, Elissadeh was disinherited, and property that was to be given to Ringer's niece was no longer part of any bequest, leaving all of Ringer's assets to Adam.

Adam lives in Haslett, Michigan, and is a resident of Ingham County. Elissadeh moved to Israel in 1980, married, moved to a kibbutz, and had three children. It is undisputed that Ringer and her husband, Alexander, executed a joint last will and testament in 2002 when he became ill with stage IV cancer. It provided that Adam and Elissadeh would take equally on

-1-

their passing. A short time before Alexander's death on May 3, 2002, Ringer moved in with Adam, where she lived until her death.

It is undisputed that after Alexander's death, Adam became Ringer's agent under a "Financial power of attorney" and a "Health care power of attorney." Adam testified that beginning around 2003, Ringer relied on Adam for physical assistance, "[e]ither accompanying her when she used the cane, holding her other arm, or using a wheelchair any time she had to make a long walk." Adam further testified that beginning in 1997, she helped Ringer with the "reconciliation of accounts, bookkeeping, bill paying, and preparation of documents or correspondence for Ringer to review, approve, and sign."

Elissadeh stated that her relationship with her mother became strained while she was living in Israel, but that her parents were "generous" grandparents. She testified that while living in Israel, and while Ringer was living with Adam, she attempted to make regular phone calls to her mother, but was only able to leave messages on her mother's voicemail system. Elissadeh asserted that when she was able to talk to someone in Michigan, it was only to Adam, because Adam was attempting to isolate her from their mother. Elissadeh offered no records of the attempted phone calls or other evidence of her attempts to reach out to her mother. In contrast, Adriana Espinosa, a homecare worker employed by Adam, testified that Ringer sat by her phone, had access to it, and frequently answered her own calls.

Elissadeh testified that, frustrated at being unable to reach her mother, she traveled from Israel to the United States to see her. She testified that at 8:00 a.m. on February 27, 2004, she showed up, unannounced, at Adam's house. She further testified that Adam answered the door and told her that the attorneys had said she could only see their mother on "neutral ground."

The parties disagreed about the circumstances surrounding police being called to Adam's home when Elissadeh arrived. Elissadeh alleged that Adam tried to "slam the door in her face" when she knocked, and that Adam then called the police, who left after Ringer made it clear that she did not intend to press charges against Elissadeh. Adam alleged that Ringer called the police because she did not want to see Elissadeh. A police report dated February 27, 2004, contains the transcription, "[c]aller rpts her sister is knocking on front door – will not leave."

While still in Michigan in 2004, Elissadeh presented Ringer with a document entitled "Agreement to Settle Issues of Inheritance" in hopes of gaining access to a Swiss trust account Elissadeh believed her father had left to her and her children before he died. The document was a release of Ringer's rights in the account such that it would pass outside of Ringer's will to Elissadeh. Adam testified that on February 27, 2004, Ringer met Elissadeh and signed the agreement, releasing her rights to the Swiss trust account and leaving Elissadeh as its beneficiary. Elissadeh testified that she transferred nearly $500,000 from the Swiss trust account to an account she controls at a financial institution in Israel.

Ringer's attorney, Douglas Austin, testified that Adam initiated contact with him in 2005 regarding Ringer's estate planning. He said that Adam was present during his initial meeting with Ringer on June 1, 2005, but that it was his standard practice to meet with an estate planning client alone, and that he met with Ringer one-on-one to discuss her will. Austin recalled that

while meeting with her alone, she was able to walk on her own, respond to questions, and speak intelligently.

Both Adam and Austin testified that Ringer was unsettled by Elissadeh's impromptu 2004 visit to Michigan and what Ringer thought amounted to a request for an early inheritance. After the visit, Ringer amended the 2002 joint estate plan and disinherited Elissadeh. Austin maintained that in 2005, Ringer could "articulate" why she wanted to disinherit Elissadeh. Under her new will, Ringer left all of her assets to Adam except a gift of real estate to her niece. In 2012, the codicil removed the gift to niece, effectively leaving all of Ringer's assets and property to Adam.

Adam testified that Elissadeh's request for early access to the Swiss account, so soon after her father's death, was a basis for Ringer disinheriting Elissadeh from her 2007 will. Austin similarly testified that ". . . I just have an impression of [Ringer] being displeased with [Elissadeh] and feeling, I think to some degree, betrayed by [Elissadeh] that she didn't expect her daughter, [Elissadeh], would do something like this." Austin recalled that he memorialized Ringer's estate planning wishes with respect to Elissadeh's disinheritance, stating "[A]s I understand it, the mutual intention was for [Elissadeh] to have the Swiss assets and nothing more."

## II. ANALYSIS

Appellant argues that the probate court erred in granting summary disposition under MCR 2.116(C)(10) based on the determination that no genuine issues of material fact existed pertaining to undue influence and Ringer's 2007 will and 2012 codicil. We disagree

This Court reviews de novo the trial court's decision on a motion for summary disposition. *Bill & Dena Brown Tr v Garcia*, 312 Mich App 684, 692–93; 880 NW2d 269 (2015), citing *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim and must be supported by affidavits, depositions, admissions, or other documentary evidence, the substance or content of which would be admissible at trial. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). A trial court properly grants a motion brought under subrule (C)(10) when the submitted evidence fails to establish any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bill & Dena Brown Tr*, 312 Mich App at 698, citing *In re Leix Estate*, 289 Mich App 574, 577; 797 NW2d 673 (2010).

Respondent claims on appeal that there is a genuine issue of material fact concerning whether the 2007 will and 2012 codicil of Ringer were the product of undue influence exerted by Adam. We disagree.

A mandatory presumption of undue influence is brought to life upon the introduction of evidence which would establish (1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary or an interest which he represents benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction. *Kar v Hogan*, 399 Mich 529, 537; 251 NW2d 77 (1976).

Once a presumption of undue influence is established, the party seeking to enforce the will must offer other evidence to rebut the presumption. *Kar*, 399 Mich at 542. If the party seeking to enforce the will proffers sufficient rebuttal evidence, the will challenger's claim of undue influence fails absent other evidence that "overcomes" rebuttal evidence. *Id*. Conversely,

if the party seeking to enforce the will fails to offer sufficient evidence rebutting the established presumption of undue influence, the challenger's burden to show that undue influence occurred is satisfied. *Id.*

As our Supreme Court explained *In re Karmey Estate*, 468 Mich 68, 75; 658 NW2d796 (2003), quoting *Kar*, 399 Mich at 537, to establish undue influence:

> [It] must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against [her] inclination and free will. Motive, opportunity, or even ability to control, in the absence of affirmative evidence that it was exercised, are not sufficient.

Undue influence will only invalidate a will where a decedent's free agency is overcome to the extent that the will expresses the desires of someone other than the testator. *In re Hannan's Estate*, 315 Mich 102, 123; 23 NW2d 222 (1946). The dispositive question is whether the decedent was capable of acting on her own motives and was free to make her own decision, notwithstanding any external persuasion. *Id*. The burden of proving undue influence lies with the person challenging a will. *In re Estate of Peterson*, 193 Mich App 257, 260; 483 NW2d 624 (1991), citing *In re Mikeska Estate*, 140 Mich App 116, 120-121; 362 NW2d 906 (1985).

Here, it is undisputed that Adam was in a fiduciary relationship with Ringer that gave rise to a legal presumption of undue influence. The burden of going forward with contrary evidence thus shifted on to Adam and our issue becomes whether she sufficiently rebutted the presumption of undue influence to the extent that no material question of fact remained on this issue.

On this point, Austin's testimony that Ringer understood her will, was clear in what she wanted, and understood the effects of the 2007 changes, was coupled with undisputed evidence offered by Ringer's in-home caretaker and Adam regarding Ringer and Elissadeh's strained relationship. The 2007 will and 2012 codicil appeared to reflect Ringer's volition in having a will that reflected her wishes to disinherit all family members except Adam. The evidence rebutted the presumption that Adam exerted undue influence over Ringer. The onus was thus on Elissadeh to present some evidence to create an issue of fact regarding whether Adam nonetheless exerted undue influence over Ringer. Elissadeh did not come forth with any evidence that could give rise to such an issue of fact.

Elissadeh argues that the trial court drew impermissible factual inferences, that she was not required to produce additional factual evidence to overcome the rebuttal evidence, and that the court drew improper conclusions about Austin's and Elissadeh's credibility. The probate court, however, did not err by considering Espinosa's and Austin's testimony establishing Ringer's ability to exercise her free will. Had Elissadeh submitted any evidence to rebut their testimony, a question of fact precluding summary disposition may have arisen. Elissadeh's contention that she did not have to produce additional evidence is incorrect. *Kar*, 399 Mich at 542 (if the party seeking to enforce the will proffers sufficient rebuttal evidence, the will challenger's claim of undue influence fails absent other evidence that overcomes rebuttal evidence). Absent some evidence of undue influence in the face of the rebuttal of the presumption, there was nothing to suggest that Ringer was unduly influenced or to create a genuine issue of material fact on this issue. Although a trial court cannot make findings of fact

or weigh credibility in deciding a motion for summary disposition, *Peterson*, 193 Mich App at 261, there is no indication that the court did so here. Elissadeh did not offer specific evidence to give rise to a factual dispute about the rebuttal evidence advanced through Austin and Espinosa. Because Elissadeh did not offer additional evidence to overcome the rebuttal evidence, the probate court did not err in accepting Austin and Espinosa's testimony as undisputed, and in concluding that the presumption of undue influence was overcome and that no genuine issues of material fact existed.

Finally, Elissadeh contends that the probate court failed to give "adequate consideration" to the presumption of undue influence. What she means by this argument is unclear. She appears to argue that the presumption alone was sufficient to create a genuine issue of material fact regarding whether there was undue influence. However, the ultimate burden rested with Elissadeh. Once the presumption was rebutted it no longer stood as conclusive evidence, and in the absence of any evidence submitted by Elissadeh, there was no genuine issue of material fact.

Affirmed.

/s/ David H. Sawyer
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto